# CHARLESTON

## OHIO VALLEY BENDING CO. v. PICKENS *et al.*

Submitted March 10, 1914. Decided May 5, 1914.

1. SALES—*Purchase Money Paid—Recovery—Instructions—Evidence.*

   Though the parties to negotiations for a verbal contract of sale have performed unequivocal acts by way of execution of the contemplated contract, upon the assumption of its existence, it is competent for a jury to find they never actually made such contract or arrived at a full and complete agreement. (p. 309).

2. APPEAL AND ERROR—*Ground for Reversal—Evidence and Instructions.*

   On a trial in which the evidence affords a basis for a finding for either of the parties, according to the belief of the jury as to what the evidence proves, the refusal of the court to admit proper evidence and the giving of an erroneous instruction are presumed to have been prejudicial and necessitate reversal and the award of a new trial. (p. 308).

3. SAME—*Presentation for Review—Refusal of Instructions.*

   A new trial will not be granted in such a case on account of the refusal of a proper instruction, if other instructions, given at the instance of the complaining party, have been omitted from the transcript by his direction, since presumptively the rulings of the court upon the requests for instructions were proper and the burden is upon the complainant to show the contrary. (p. 309),

Error to Circuit Court, Barbour County.

Action by the Ohio Valley Bending Company against Dever

Pickens and others.    Judgment for defendants, and plaintiff brings error.

*Reversed and Remanded.*

*Leroy V. Holsberry,* for plaintiff in error.    .

*Wm. T. George,* for defendants in error.

POFFENBARGER, JUDGE:

On this writ of error to a judgment on a verdict in a case appealed from a justice's court, the assignments of error relate to rulings on instructions, the admission and rejection of evidence and the sufficiency of the evidence to sustain the verdict for the defendants.

To the action brought for the recovery of money paid by the plaintiff to the defendants on acount of the purchase of hickory timber, no part of which was delivered to the vendee, the defense was breach of the contract of purchase, resulting in damages to the vendors in a sum equal to the amount so paid, $150.00, or in excess thereof.

The terms of the contract, if any was ever concluded between the parties, are to be gathered from correspondence and conversations between them.    Desiring to cut and market, as agent of his wife, certain timber on her land, including a considerable amount of hickory, Dever Pickens made his purpose known to the plaintiff, and thereafter its agent, W. F. Pierce of Buckhannon, took the matter up with him, offering $22.00 per thousand feet for the hickory timber in the log, with the understanding that Pickens was to cause it to be sawed and put on board the cars at Lost Creek or Clarksburg.    The offer was accepted, but there is a good deal of controversy in the evidence as to modifications thereof. Pickens claims it was further agreed that the plaintiff should send an agent to the saw-mill to superintend the sawing of the timber, in view of peculiar difficulties and danger in the manufacture thereof.    If this was one of the terms of the contract, it was not complied with.    Failure to reduce the contract to writing also was relied upon as an obstacle or hindrance to its performance.    Notwithstanding this failure however, Pickens began the cutting of the timber, Chamber-

74 W. Va.

lain, the secretary and treasurer of the company, visited the premises and gave instruction about the cutting thereof, $150.00 was paid on the purchase price and Pierce inspected and scaled the timber in the log and placed the company's brand upon it. The negotiations began in the fall of 1908, Chamberlain made his visit about the middle of February 1909, between that date and the 5th of March 1909, Pierce made his inspection and Pickens was ready to begin sawing about the first of April, through a contractor by the name of Stout. Pierce, in his inspection, rejected about one hundred logs which would have cut about 10,000 feet of lumber. Prior to this occurrence, there seems not to have been any misunderstanding or trouble between the parties. An undated letter from Pickens to Pierce expressed readiness of the latter to contract with him for the sale of the timber at the price offered and informed him that he had contracted with Stout to do the sawing. It further advised that the writer wanted to commence cutting the timber at once and would like to have specifications and contract as soon as possible. On January 16th, 1909, he notified Pierce that he had had no reply from his letter but had given the contract for cutting the timber. On the same day, Pierce replied giving directions for cutting down the trees and cutting them into logs, stating that the logs must be free from wind shakes, dotes and knots. On January 18th, Pickens replied to this letter and found no particular objections to its contents. As to what had been said as to the quality of the timber, he wrote as follows: "Your letter states logs must be free from knots. As I understand, depends on kinds of knots, or whether there are very many on a log. Some logs have one, not large. Will this injure the lumber?" Proceeding, he requested Pierce to come down the next week and give advice as to cutting and said "I want to do it satisfactory to you as I have not had any experience in the business and prefer not to go too far without you seeing it. Besides I do not want to cut timber, haul it to mill and have it thrown out." This request seems not to have been complied with, but Chamberlain went out and looked over the timber and gave general directions and advice as to the cutting of it some time in February. After his inspection, Pierce gave to Pickens, a copy of the tally and sent

74 W. Va.

another to his principal. In calculating the quantity of the timber from this copy, Pickens made a mistake and found the quantity to be 43,000 feet when in point of fact it was 49,328 feet. Upon his complaint, Pierce went back and discovered his mistake and gave him the true result of the scaling. On March 5th, 1909, Pickens wrote to the company, expressing his dissatisfaction with the inspection, saying among other things, "In all, he rejected about 10 M feet, he argued if I was not satisfied with measurement to take mill measure, I to decide before the timber was manufactured, your specifications to be mentioned in contract between us, so that I can have same put in contract I have with Mr. Stout who is to do the sawing. All inspection of manufactured timber is to be made at mill. Mr. Pierce complained about there being too many 10 foot logs. I agreed to make them 9, or the proper proportion of them are to be cut off at mill. The lumber is to be paid for as it is delivered at Lost Creek in car load lots and before the lumber is loaded you are to pay Mr. Stout $11.50 per M feet for us. The balance is to be paid to John D. Pickens. The contract is to be made in the name of Minnie B. Pickens. I want three copies of contract, one for you one for us and one for John D. Pickens. The $150.00 paid on contract is to be deducted when last of lumber is taken." He further complained of the rejection of logs which had been looked over by Mr. Chamberlain. He also mentioned a modification of the contract agreed upon by Mr. Chamberlain to the effect that he was to get $22.00 per 1000 if he loaded the lumber on the cars or $21.50 per 1000 if he did not so load it. He concluded by saying he wanted to make the contract with the company and not with Mr. Pierce, and would in the future expect to do all the business with the company, and that he would commence manufacturing timber about the first of April and deliver to the railroad as soon as condition of the roads would permit, and said he would expect a contract soon. In a letter from the company by its secretary, dated March 16, 1909, he was informed that he must make his contract with Mr. Pierce upon such terms as he and Mr. Pierce could agree upon, and, if he did not care to do that, he could return the $150.00 that had been paid him and regard the transaction as closed. What occurred between him and Pierce from that date until

May 7, 1909, the record does not very clearly disclose, but, on May 7, Pierce wrote him a letter in which reference was made to conversation between them by telephone, on the morning of May 4th, reminding him of his agreement to advise him, on that evening or the next morning, when he would be ready to saw the hickory logs, and his failure to keep such agreement. In this letter he was told to either get the hickory logs sawed and loaded on the cars, without further delay, or pay back the $150.00 at once.  He was also reminded the company was under no obligation to send a man to help him to get started on the sawing, though it could have been done that week.  In this letter, specifications for the sawing were enclosed, which Stout says he could have followed and observed without difficulty.  This seems to have been the last communication between the parties.

Pickens had the timber sawed and sold the lumber to the Baltimore Hub and Wheel Co., at prices which averaged $21.12 per 1000 and the measurement of the lumber, as sold, exceeded the scaling in the logs by several thousand feet, so that Pickens got $1361.12 for it, while, under his contract with plaintiff, he would have gotten $1085.21.  Notwithstanding this, he claims to have been damaged to the extent at least of $150.00 by reason of the failure of the plaintiff to furnish specifications and send a man to superintend the sawing.  These damages he estimates as follows: $35.00 for cutting and hauling the 100 rejected logs; $135.00 for extra work occasioned by the necessity of sawing oak timber which had to be hauled around the hickory timber, the latter having been placed near the skids with a view to sawing it first.

The evidence admitted over objections of the plaintiff was testimony of Pickens, concerning the alleged inspection made by Chamberlain, the loss of the 100 rejected logs, the expense of cutting and hauling same, the alleged damages resulting from the failure of the plaintiff to furnish specifications and an agent to superintend the cutting and sawing of the hickory timber, before he was compelled to saw the oak timber, and testimony of the witness Douglass to the effect that he had heard Pierce tell Pickens he would send a man to see to the sawing.

As the subject matter of this testimony was directly in

issue between the parties, the court properly admitted it. The exception to the evidence relating to the acts of Chamberlain and the 100 rejected logs is based largely upon the theory of want of authority in Chamberlain to inspect the timber or agree upon any of the terms of the contract. But he was an officer and agent of the company and went upon the ground for some purpose in connection with the contract. Being such and having done so, he was held out by the company as having some authority and Pickens was entitled to have these facts go to the jury for what they are worth. Moreover, the letter to Pickens from the company, dated March 16, 1909, was evidence of authority in Chamberlain to pass upon the quality of the timber to some extent, at least. It said: ''Mr. Chamberlain was sent out to instruct the men how to cut the logs and to tell you and them what would pass.'' The claim for damages, alleged to have resulted from the failure of the plaintiff to send a man to superintend the sawing, is founded upon Pickens' positive and emphatic testimony to the effect that this was one of the conditions of the contract. The introduction of the testimony of Douglass was opposed upon the ground that the conversation was subsequent in date to the making of the contract, but the contract was altogether informal and it is difficult to say just when it was completed, if at all.

The rejected evidence was an offer on the part of the plaintiff to prove by Pierce that Chamberlain knew nothing about the timber business and had no authority to inspect or pass upon any lumber or logs taken up by the company. The purpose for which Chamberlain was sent out and what he actually did were left in a state of uncertainty by the evidence. As to these matters, the letter of March 16, was indefinite. Relying upon his acts, Pickens claimed a breach of the contract by Pierce in the inspection. Hence, the extent of his authority was an important element of the case. Had the plaintiff been permitted to show his incapacity for the work of inspection and his lack of authority therefor, these facts would have aided the jury in reaching a proper conclusion as to his acts and the effect thereof. Hence, the testimony was both relevant and material and should have been admitted.

The refusal of two instructions requested by the plaintiff is complained of. One of these was intended to tell the jury they must find for the plaintiff, if they believe from the evidence that no contract or final agreement was made by the parties. The other would have told them to find for the plaintiff, if they believed from the evidence that the defendants were not prevented from carrying out the contract as made and had broken it in anticipation of an expected breach thereof by the plaintiff. It appears from the clerk's certificate that the instructions given to the jury were omitted from the transcript at the request of the attorney for the plaintiff. If all the instructions had been brought up, it might appear that the subject matter of both of these is covered by other instructions given, and as the burden is upon the plaintiff in error to show the court erred in its rulings, it should have brought up these instructions in order to overcome the presumption that the rulings of the court were proper.

As the evidence left ample room for the jury to find that no actual contract had been concluded between the parties, the first one of these two instructions was proper and should have been given, if the court did not give another covering its subject matter. Pierce claimed the contract had been made and so did Pickens, it is true, but their contentions as to what the contract was were highly contradictory, and, notwithstanding all the things done by each of them, the evidence discloses facts and circumstances tending to prove they never actually agreed upon anything as a complete and final contract. The claims of the witnesses are their mere conclusions or opinions. Nevertheless the judgment could not be reversed and a new trial granted on account of the refusal to give this instruction, since others were given and presumptively the court ruled properly on all requests for instructions.

The other instruction improperly assumed that the contract as claimed by the plaintiff had been made. At least, it assumed the existence of a contract and was susceptible of the interpretation here put upon it, wherefore the court's action in rejecting it was proper.

Two instructions were given at the instance of the defendants over the objections of the plaintiff. No defect in the

first one of them is perceived, but the second was clearly erroneous. It told the jury that, in the event they should find, from the evidence, the plaintiff had failed to comply with the contract "set up by the defendants and relied upon by them" and such failure was not the fault of the defendants, they should find for the defendants, if they further believed the damages resulting amounted to as much as $150.00 or more. While likely not intended to do so, this instruction by its terms adopted the theory of the defendant as to what the contract was and assumed the establishment thereof. The reading of the other instruction with this one does not remedy the defect, for the other merely submits inquiries as to the existence and breach of a contract and the measure of damages. It says nothing of the conflicting theories and contentions of the parties as to the terms and conditions of the contract.

The two errors here noted are presumed to have been prejudicial, since it is apparent the jury could have found for the plaintiff.

The judgment must, therefore, be reversed, the verdict set aside and the case remanded for a new trial.

*Reversed and Remanded.*